UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE AVERY,<br><br>           Plaintiff,<br><br>    v.<br><br>MARC ELIA, et al.,<br><br>           Defendants. | No.  2:11-cv-03341 JAM JFM (PC)<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

**I.     INTRODUCTION**

Plaintiff Kyle Avery is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  This matter is before the court on the motion of defendants Carter, Elia, Konrade, and Virga to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), filed on February 15, 2013.  ECF No. 27.  On April 18, 2013, defendant Beard joined in the motion to dismiss (ECF No. 34), and on April 29, 2013, defendant Jones joined in the motion to dismiss (ECF No. 36).  In response to defendants' motion to dismiss, plaintiff has filed, on March 18, 2013, a motion to amend his complaint (ECF No. 31) and subsequently on May 2, 2013, a motion styled as a motion to deny defendant Beard's joinder and

/////

1

defendants' motion to dismiss (ECF No. 38).[1]  In his motion, plaintiff contends that defendants' motion to dismiss should be denied pending the court's ruling on his outstanding motion to amend.  ECF No. 38.  For the reasons set forth, infra, the court finds the allegations in plaintiff's operative first amended complaint are sufficient and will recommend that defendants' motion to dismiss be denied.  For that reason the court will also deny plaintiff's motion to amend his complaint as unnecessary.

**II.    BACKGROUND**

Plaintiff is currently incarcerated at R.J. Donovan Correctional Facility in San Diego, California.  Plaintiff was housed at California State Prison-Sacramento during the period when the alleged violations occurred, and when he filed this action.  ECF Nos. 1 and 25 at 5.

Plaintiff filed his original complaint on December 16, 2011.  ECF No. 1.  On March 19, 2012, the court found that plaintiff's complaint stated a cognizable claim for relief and deemed service appropriate for defendants Carter, Elia, Goekee, Konrade, and Virga.  ECF No. 4.  On July 31, 2012, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 19.  On September 28, 2012, plaintiff filed a motion to amend his complaint.  On October 17, 2012, the court denied defendants' motion to dismiss without prejudice and granted plaintiff's motion to amend his complaint.  ECF No. 22.

On November 1, 2012, plaintiff filed a document styled as a motion for designation of class action, a motion to appoint counsel, and a request for class status.  ECF No. 23.  Plaintiff attached his amended complaint to this document.  Id. at 2-41.  In his first amended complaint, plaintiff alleges violations of his rights under the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.  ECF No. 25.  In short, plaintiff alleges defendants made him extinguish a controlled fire while he and other Wiccan inmates were in the middle of a religious ceremony, and that they were no longer allowed to use the fire pit for that religious purpose.  Id. at 26-27.  Plaintiff also alleges he was initially given the right to possess an "altar box designed to religious specifications" for his Wiccan practices, but that this

---

[1] On April 19, 2013, plaintiff filed a motion styled as a motion to compel court reply (ECF No. 35), seeking an order on his motion to amend.  That motion is mooted by this order.

1  altar was later confiscated and destroyed. Id. at 31-33. Plaintiff argues the deprivation of a fire
2  pit and a religious altar resulted in a violation of his First Amendment rights. Id. at 27, 33.
3  Plaintiff further alleges defendants violated his Fourteenth Amendment rights by denying him the
4  right to use a fire pit for religious purposes while authorizing the use of a fire pit for Native
5  Americans. Id. at 35-36. Finally, plaintiff seeks to have Wiccans recognized by California
6  Department of Corrections and Rehabilitation ("CDCR") policy in the same manner Native
7  Americans are recognized. Id. at 30.
8  　　　　On January 18, 2013, the court denied plaintiff's motion for designation of class counsel
9  and request for the appointment of counsel. ECF No. 24 at 2. The court dismissed Bill Goekee
10 as a defendant in the case pursuant to plaintiff's representations that he was no longer bringing
11 claims against him. Id. The court found that the first amended complaint stated a cognizable
12 claim for relief and ordered defendants Elia, Virga, Konrade, and Carter to respond. Id. The
13 court deemed service appropriate for three new defendants: Sgt. Jones, Correctional Officer
14 Huggins and the CDCR Secretary Dr. Jeffrey Beard. Id.
15 　　　　Defendants Carter, Elia, Konrade, Virga, Beard and Jones (collectively "defendants")
16 move to dismiss plaintiff's complaint on four grounds: (1) plaintiff fails to state a Free Exercise
17 Clause claim; (2) plaintiff fails to state an Equal Protection Clause claim, (3) plaintiff is not
18 entitled to injunctive relief or punitive damages; and (4) defendants are entitled to qualified
19 immunity. ECF No. 27 at 1. As noted above, plaintiff has moved to amend his complaint and has
20 requested that defendants' motion to dismiss be denied pending ruling on the motion to amend.
21 ECF No. 31. Plaintiff has not otherwise opposed the motion to dismiss on the merits.
22 **III.    ANALYSIS**
23 　　　　Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for
24 "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In
25 considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true
26 the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197
27 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes,
28 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint

1  must contain more than "a formulaic recitation of the elements of a cause of action;" it must
2  contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell
3  Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not
4  necessary; the statement [of facts] need only '"give the defendant fair notice of what the . . . claim
5  is and the grounds upon which it rests."'" Erickson, 551 U.S. 89, 127 S. Ct. at 2200 (quoting Bell
6  Atlantic at 554, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

       Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).  A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

       Moreover, "[n]otice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action, statutes or legal theories." Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)).  "'This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" Alvarez, 518 F.3d at 1157 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)).  "A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss." Id.

       A.    First Amendment - Free Exercise Clause Claim

       Defendants argue that plaintiff fails to "allege that the denial of the use of a fire pit or the confiscation of [his] religious altar substantially burdened his religious practice." ECF No. 27-1 at 5.  For the reasons discussed below, the court finds defendants' motion to dismiss plaintiff's Free Exercise claim should be denied.

       "To prevail on [his] Free Exercise claim, Plaintiff[] must allege facts plausibly showing that the government denied [him] 'a reasonable opportunity of pursuing [his] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Hartmann v. California Dept. of Corrections and Rehabilitation, 707 F.3d 1114, 1122 (9th Cir.

2103) (quoting Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam)).

With regard to the use of a fire pit, plaintiff alleges in his first amended complaint that he was provided a religious lodge area on natural ground because, among other reasons, Wiccans require "a soiled area in which to dig a fire pit for control burning at rituals & ceremonies [relevant] to the Wiccan or individual practitioners doctrines or personal religious practices and observations." ECF No. 25 at 9. Plaintiff alleges that his religious practice uses a fire pit for ceremonies. Id. at 11. Plaintiff also alleges that Native Americans "are being provided fire wood each month to place in their sweat lodge fire and sweat ceremonies," and that Wiccans have "an equal stake in [their] religious practices of utilizing a fire pit for religious ceremonies." ECF No. 25 at 11. Regarding the use of a religious altar, plaintiff describes the altar as religious in nature, and explains that the altar was released to him so that his Wiccan practices were not "contingent on a [C]hristian or [C]atholic worship [schedule] which is not how Wiccans practice." Id. at 14. Plaintiff further alleges that "[a]n [altar] is a religiously rooted tool identified in the Wiccan doctrine and plaintiff held it as religiously valuable to" him. Id. at 33. Finally, plaintiff alleges that the loss of the altar posed a "significant hardship in the loss of a [consecrated] spiritual item of value hard to replace." Id. at 34.

Plaintiff is not required to specifically allege the denial "substantially burdened" his practice by using precise legal theory language. Alvarez, 518 F.3d at 1157. Viewed in the light most favorable to the plaintiff, the allegations are sufficient to give rise to an inference that the use of the fire pit and religious altar were tied to plaintiff's religious faith, and that by not having these items plaintiff was deprived a "reasonable opportunity of pursing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Cruz, 405 U.S. at 322; Hartmann, 707 F.3d at 1122-23. Plaintiff's allegations are sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 554. Therefore, the court finds that the first amended complaint states a cognizable claim for a violation of the Free Exercise Clause of the First Amendment against defendants.

/////

/////

B.      Fourteenth Amendment - Equal Protection Clause Claim

Defendants argue that plaintiff fails to state an Equal Protection Clause claim because "he does not allege that fire played an equally important or similar role in Wiccan and Native American religious services[,] [and] does not explain the role fire plays in Wiccan religious ceremonies or why its use was necessary." ECF No. 27-1 at 5-6. Defendants further argue that plaintiff fails to allege they acted "intentionally and with a discriminatory intent when they allegedly denied Wiccans a fire pit." Id. at 6. For the reasons discussed below, the court finds defendants' motion to dismiss plaintiff's Equal Protection claim should be denied.

As discussed above, "an inmate who is an adherent of a minority religion must be afforded 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Allen v. Toombs, 827 F.2d 563, 568 (9th Cir. 1987) (quoting Cruz, 405 U.S. at 322). "To prevail on an Equal Protection claim brought under § 1983, Plaintiff[] must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." Hartmann, 707 F.3d at 1123 (quotations and citations omitted).

Here, plaintiff asserts he is a member of the Wiccan religion. In his operative first amended complaint, plaintiff alleges that Wiccans require "a soiled area in which to dig a fire pit for control burning at rituals & ceremonies [relevant] to the Wiccan . . . doctrines or personal religious practices and observations." ECF No. 25 at 9. Plaintiff further alleges that "[t]he burning of a [hearth] fire [is] . . . rooted in religious doctrine." Id. at 26. Viewed in the light most favorable to plaintiff, these allegations are sufficient to give rise to an inference that fire plays an important role in Wiccan religious practices. As noted above, plaintiff alleges that Native Americans "are being provided fire wood each month to place in their sweat lodge fire and sweat ceremonies," and that Wiccans have "an equal stake in [their] religious practices of utilizing a fire pit for religious ceremonies." ECF No. 25 at 11. Finally, the court finds plaintiff sufficiently alleged facts showing that "defendants acted with an intent or purpose to discriminate against" him. Hartmann, 707 F.3d at 1123. Plaintiff specifically refers to defendant Elia's actions as "[discriminating] against Wiccans right to fire usage" and he alleges that "it was not ever

previously nor to this day established that there was a clearly established penal reason and the order was clearly evident as being discriminatory in nature." Id. at 12, 27.

For the foregoing reasons, plaintiff has sufficiently alleged that fire plays a significant role in his religious practice in the same manner it does for Native American practices, and that defendants acted with discriminatory intent to state a cognizable claim for a violation of the Equal Protection Clause of the Fourteenth Amendment against defendants. See, e.g., Swierkiewicz, 534 U.S. at 515 (to survive a motion to dismiss, plaintiff need not plead a prima facie case, as "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits"). Whether defendants acted intentionally and whether their actions were reasonably related to legitimate penological concerns are issues more appropriately addressed through discovery and summary judgment motions. Alvarez, 518 F.3d at 1157.

C. Plaintiff's Request for Injunctive Relief or Punitive Damages

Plaintiff seeks both injunctive relief and punitive damages in this action. ECF No. 25 at 30. Defendants contend that because plaintiff has been transferred from California State Prison-Sacramento he lacks standing to seek injunctive relief. ECF No. 27-1 at 7. The requirements for standing to sue are well-established. A party who seeks to establish standing must show (1) a concrete and imminent "injury in fact," (2) a causal connection between the defendants and the alleged injury, and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). A party's standing to bring a claim is determined at the time an action is filed. Lujan, 504 U.S. at 569 n.4. Plainly, plaintiff was housed at California State Prison-Sacramento when he filed his original complaint on December 16, 2011. ECF No. 1. Furthermore, plaintiff was directly affected by the actions set forth in the operative first amended complaint. Therefore, the court finds plaintiff has standing and defendants' motion to dismiss plaintiff's request for injunctive relief on these grounds should be denied.[2]

---

[2] Defendants have not argued plaintiff's request for injunctive relief has become moot as a result of his transfer from California State Prison-Sacramento following the filing of his complaint. However, defendants would not succeed on this argument, either. Plaintiff was not transferred from California State Prison-Sacramento until approximately April 2012. ECF No. 9. Generally, when a prisoner is transferred from a prison, his claim for injunctive or declaratory relief becomes

Defendants also argue that plaintiff's prayer for punitive damages should be dismissed. They contend that plaintiff's "allegations show that Defendants had reasonable, non-malicious reasons for their actions," and are therefore "insufficient to show that Defendants acted with reckless or callous indifference" so that plaintiff's claim for punitive damages is not proper. ECF No. 27-1 at 8.

In <u>Smith v. Wade</u>, 461 U.S. 30, 38 (1983), the Supreme Court rejected the argument that actual malicious intent "should be required . . . [in a § 1983 action] because the threshold for punitive damages should always be higher than that for liability in the first instance." The Supreme Court turned to the common law standard for assessing punitive damages, which authorized "[p]unitive damages . . . for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." <u>Smith</u>, 461 U.S. at 46-47. Punitive damages may be available even in circumstances where the plaintiff is unable to show compensable injury. <u>Id.</u> at 55 n.21; <u>Davis v. Mason Co.</u>, 927 F.2d 1473, 1485 (9th Cir. 1991).

Here, plaintiff alleges defendants Virga and Elia willfully discriminated against him. ECF No. 25 at 13, 27. Plaintiff alleges defendant Konrade knew the religious altar belonged to plaintiff when he gave orders to have it removed from the facility, and then later refused to return

---

moot as to conditions at that particular facility. <u>Nelson v. Heiss</u>, 271 F.3d 891, 897 (9th Cir. 2001); <u>see also Dilley v. Gunn</u>, 64 F.3d 1365, 1368 (9th Cir. 1995). However, plaintiff "may sue for injunctive relief to the extent he claims systemic discrimination against" Wiccans throughout the CDCR. <u>Rupe v. Cate</u>, 688 F.Supp.2d 1035, 1043 (E.D. Cal. 2010); <u>see also Hartmann</u>, 707 F.3d at 1127 ("a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief"). Here, plaintiff alleges that the CDCR has failed to create a policy for Wiccans similar to one created for Native Americans, and that defendant CDCR Secretary Beard "has authority to enforce any rights this court declares plaintiff is entitled to." ECF No. 25 at 8, 30. Plaintiff seeks "to incorporate in Agency Policies Equal Provisions [and] Protections of Land Sanctity [and] sweat style fire pits for Pagan Earth based religious groups as is already [i]ndoctrinated into policy in 15 CCR and [Department] Operations Manual[] for Native Americans." ECF No. 25 at 8; <u>see, e.g.</u>, 15 Cal. Code. Reg. § 3000 ("Sweat Lodge means a native American Indian ceremonial hut"); CDCR Department Operations Manual section 101060.9.1 (providing guidelines regarding Native American sweat lodge ceremonies, including permitted sacred items); Fed. R. Evid. 201 (a court may take judicial notice of a fact not subject to reasonable dispute because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned). The alleged failure to include provisions for the Wiccan religion in the California Code of Regulations and the CDCR Department Operations Manual forms the basis of plaintiff's claim against defendant CDCR Secretary Beard. ECF No. 25 at 8, 11, 29-30. Because plaintiff is still incarcerated in a prison run by the CDCR, his claim based on this alleged failure to create a policy that provides for Wiccan practitioners is not moot. <u>Rupe</u>, 688 F.Supp.2d at 1043.

it to plaintiff. Id. at 17. Plaintiff alleges defendants' actions are retaliatory in nature "to a point it appears aimed at plaintiff's advocacy" of the Wiccan religion. Id. at 31. Finally, plaintiff alleges defendants' actions were meant to "antagonize" him. Id. at 32. Based on the facts alleged, the court finds a jury could conclude that defendants were "motivated by evil motive or intent" or acted with "reckless or callous indifference" to plaintiff's first amendment rights when they denied him access to a fire pit and a religious altar. Smith, 461 U.S. at 56. Thus, defendants' motion to dismiss plaintiff's prayer for punitive damages should be denied.

### D. Qualified Immunity

Defendants argue they are entitled to qualified immunity as to plaintiff's Free Exercise Clause claim because the constitutional right of Wiccans to maintain a fire pit was not clearly established at the relevant time, and plaintiff did not have a constitutional right to possess an altar. ECF No. 27-1 at 9-10.

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it must be resolved at the "earliest possible stage in litigation." Id. at 231-32.

To determine if an official is entitled to qualified immunity the court determines (1) if the facts as alleged state a violation of a constitutional right and (2) if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Ashcroft v. al-Kidd, ___ U.S. ___, ___, 131 S. Ct. 2074, 2080 (2011). A negative answer to either question means immunity from suit is appropriate. Pearson, 555 U.S. at 236. District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at

hand." Id. Here, the prongs of the qualified immunity analysis will be addressed in the order they are listed above.

As to the first prong, the court has determined, for the reasons stated above, that plaintiff's allegations are sufficient to establish the existence of a violation of his rights under the Free Exercise Clause.

Therefore, whether defendants are entitled to qualified immunity turns on whether the constitutional right was clearly established such that defendants would have known that their conduct was unlawful. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). This part of the inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau, 543 U.S. at 198 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted). "If the only reasonable conclusion from binding authority were that the disputed right existed, even if no case had specifically so declared, prison officials would be on notice of the right and would not be qualifiedly immune if they acted to offend it." Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997). In other words, "'[c]losely analogous preexisting case law is not required to show that a right was clearly established.'" Sorrels v. McKee, 290 F.3d 965, 970 (9th Cir. 2002) (quoting White v. Lee, 227 F.3d 1214, 1238 (9th Cir. 2000)). "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," Hope, 536 U.S. at 741.

"[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Wilson v. Layne, 526 U.S. 603, 615 (1999). Here, plaintiff alleges defendants burdened the practice of his religion by preventing him from using a fire pit and a religious altar, which he believes are mandated by his faith. ECF No. 25 at 27, 33. It was clearly established at the time of the alleged violations that prison officials may not substantially burden inmates' right to the free exercise of religion without some legitimate penological justification.[3] See Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008) ("Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'") (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)); see also Cruz, 405 U.S. at 322. Defendants argue that they are entitled to qualified immunity because a case addressing the specific nature of plaintiff's claim - that is whether a Wiccan inmate's constitutional rights are violated when he is denied access to a fire pit and a religious altar - does not exist. However, the analysis does not end here. Defendants' actions are not automatically protected because their actions have not previously been held unlawful. Anderson, 483 U.S. at 640; see also Sorrels, 290 F.3d at 970. Rather, defendants' alleged unlawfulness can be apparent "in the light of pre-existing law." Id. At the time of the alleged conduct, case law existed to put defendants on notice that their alleged actions violated established law, despite the fact that the circumstances in this particular action are to some degree novel, Hope, 536 U.S. at 741. See Shakur, 514 F.3d at 885 (finding a prison's refusal to provide a Muslim inmate with a kosher meat diet implicated the free exercise clause); Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005) (finding Native American inmate's religion was burdened by a grooming policy); Jackson v. Lewis, 163 F.3d 606 (9th Cir. 1998) (unpublished

---

[3] Defendants argue, in the alternative, that if the constitutional right was clearly established, then their actions were reasonable. However, the question to be addressed in the second prong of the qualified immunity analysis is not whether the clearly established right was validly restricted. Rather, this prong is met with a finding that the constitutional right was clearly established such that defendants would have known that their conduct was unlawful. The court need not and will not determine whether defendants' restriction on plaintiff's religious rights were "reasonably related to legitimate penological interests" because an analysis of the applicable Turner factors at this stage of the litigation is premature. See Turner v. Safley, 482 U.S. 78, 89-90 (1987) (setting forth four factors when determining if a restriction that infringes on an inmate's rights is reasonably related to legitimate penological interests); see also Dunn v. Castro, 621 F.3d 1196, 1205, n.7 (9th Cir. 2010). That issue remains to be resolved in further proceedings.

op.) (while finding summary judgment appropriate because a Wiccan inmate failed to provide evidence that tarot cards were central to the Wiccan religion or required for its observance, the Ninth Circuit also noted the prison "made a good faith accommodation of [the inmate's] religious needs by permitting Wiccans to possess" various religious items); see also Prison Legal News v. Cook, 238 F.3d 1145, 1152 (9th Cir. 2001) ("Although unpublished decisions carry no precedential weight, Department Officials may have relied on these decisions to inform their views on whether the regulation was valid and whether enforcing it would be lawful.").

In this case, the facts alleged by plaintiff, if proved, could establish a violation of plaintiff's First Amendment rights. Furthermore, the contours of those constitutional rights were sufficiently clear such that defendants had "fair warning" that their alleged conduct was unconstitutional. Hope, 536 U.S. at 739, 41. Therefore, the court finds defendants are not entitled to dismissal on the basis of qualified immunity.

IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's March 18, 2013, motion to amend his complaint (ECF No. 31) is denied as unnecessary;

2. Plaintiff's April 19, 2013, motion to compel court reply (ECF No. 35) is denied as moot;

3. Plaintiff's May 2, 2013, motion to deny defendant Beard's joinder in defendants' motion to dismiss (ECF No. 38) is denied as moot; and

IT IS HEREBY RECOMMENDED that:

1. Defendants' February 15, 2013, motion to dismiss (ECF No. 27) be denied;

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 14, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

aver3341.mtd

13