1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KYLE AVERY,                                No.  2:11-cv-3341 JAM CKD P

12                  Plaintiff,

13          v.                                  ORDER AND

14   MARC ELIA, et al.,                         FINDINGS AND RECOMMENDATIONS

15                  Defendants.

16

17          Plaintiff is a California prisoner proceeding pro se with an action for violation of civil

18   rights under 42 U.S.C. § 1983.  This action is proceeding on plaintiff's first amended complaint

19   filed November 1, 2012 against defendants Kernan,[1] Carter, Elia, Huggins, Jones, Konrad and

20   Virga (defendants); all current or former employees of the California Department of Corrections

21   and Rehabilitation (CDCR).  Defendants have filed a motion for summary judgment.

22   /////

23

24   [1]  Current California Department of Corrections and Rehabilitation Secretary Scott Kernan, sued
     in his official capacity for injunctive relief, is hereby substituted for defendant Jeffrey Beard
     pursuant to Federal Rule of Civil Procedure 25(d).  Also, plaintiff identifies "CDCR Secretary" as
25   a defendant in "Ground Three" of his first amended complaint which is a claim for violation of
     the Equal Protection Clause. To the extent plaintiff seeks damages against the "CDCR Secretary,"
26   his claims are not cognizable under 42 U.S.C. § 1983.  See Will v. Mich. Dep't of State Police,
     491 U.S. 58, 71 (1989) (state officials sued in their official capacity not "persons" subjected to
27   liability for damages under 42 U.S.C. § 1983 as official capacity suits are no different than suits
     against state itself).
28
                                               1

1    As a preliminary matter, the court notes that plaintiff does not oppose defendants' motion

2    for summary judgment as it pertains to plaintiff's remaining claims against defendant Carter.

3    ECF No. 111-1 at 11 & 71.[2]  Good cause appearing, the court will recommend defendant Carter

4    be granted summary judgment.

5    Also, plaintiff has filed a motion seeking leave to file a sur-reply concerning defendants'

6    motion.  With respect to motions, the local rules permit an opposition, and then a reply.  Local

7    Rule 230.  The Local Rules do not provide for sur-replies and there is no need for deviation from

8    that rule here, especially considering the length of plaintiff's opposition (264 pages) and the fact

9    that in his motion seeking leave, plaintiff explains he wishes to file a sur-reply mostly to address

10    defendants' assertions regarding the sincerity of his alleged belief in Wicca.  As indicated below,

11    the court's ruling on defendants' motion does not turn on the sincerity of plaintiff's alleged belief

12    in Wicca.  For these reasons, plaintiff's request for leave to file a sur-reply will be denied.

13    I. Summary Judgment Standard

14    Summary judgment is appropriate when it is demonstrated that there "is no genuine

15    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

16    Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by

17    "citing to particular parts of materials in the record, including depositions, documents,

18    electronically stored information, affidavits or declarations, stipulations (including those made for

19    purposes of the motion only), admissions, interrogatory answers, or other materials. . ."  Fed. R.

20    Civ. P. 56(c)(1)(A).

21    Summary judgment should be entered, after adequate time for discovery and upon motion,

22    against a party who fails to make a showing sufficient to establish the existence of an element

23    essential to that party's case, and on which that party will bear the burden of proof at trial.  See

24    Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an

25    /////

26    /////

27

28    [2]  Except where otherwise noted, the page numbers referenced with respect to documents filed in this case are those assigned by the court's electronic docketing system.

1    essential element of the nonmoving party's case necessarily renders all other facts immaterial."

2    Id.

3         If the moving party meets its initial responsibility, the burden then shifts to the opposing

4    party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

5    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

6    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

7    of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

8    and/or admissible discovery material, in support of its contention that the dispute exists or show

9    that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed.

10   R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

11   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

12   governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

13   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

14   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

15   party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

16        In the endeavor to establish the existence of a factual dispute, the opposing party need not

17   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

18   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

19   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

20   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

21   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

22   amendments).

23        In resolving the summary judgment motion, the evidence of the opposing party is to be

24   believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the

25   facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

26   U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

27   obligation to produce a factual predicate from which the inference may be drawn.  See Richards

28   v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

3

1    (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

2    simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

3    taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

4    'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

5    II.  <u>Plaintiff's Allegations</u>

6          In his first amended complaint (ECF No. 25) which is signed under the penalty of perjury,

7    plaintiff alleges, in relevant part, as follows:

8          Plaintiff is serving a sentence of 35 years-to-life imprisonment imposed under California's

9    "Three Strikes" law for robbery.  He is a "Wiccan" and had practiced "Wicca" for approximately

10   fifteen years.  Plaintiff describes Wicca as an "earth-based" religion, but fails to provide specifics

11   as to what that means.

12         Plaintiff asserts that the exercise of Wicca includes the practice of burning fire wood in a

13   fire pit during a "bonfire ceremony."  For some period of time while plaintiff was an inmate at

14   California State Prison, Sacramento (CSP-Sac), he and other Wiccans were permitted to burn

15   wood in a "fire pit."  Then, in late 2010 during a "bonfire ceremony," plaintiff was told by

16   defendants Jones and Huggins to extinguish the fire and forced to turn over all remaining wood.

17   Plaintiff was told that Jones and Huggins, correctional officers, did this at the direction of

18   defendant Elia, a Community Resource Manager.  At some point later, Elia told plaintiff that

19   Wiccans would no longer be allowed to burn wood in a "fire pit" because that practice is not

20   recognized as a necessary Wiccan practice in the Federal Bureau of Prisons Religious Programs

21   Technical Reference Manual (FBP Manual).  Plaintiff questioned Elia as to the applicability of

22   the FBP Manual in state prison.

23         For approximately 1 ½ years, until the time plaintiff was transferred to R.J. Donovan

24   Correctional Center (RJD) in San Diego, plaintiff, and other Wiccans at CSP-Sac, were not

25   permitted to ceremonially burn wood in the "fire pit."  Plaintiff alleges defendant Virga, the

26   Warden at CSP-Sac at that time, was aware of the decision to deny plaintiff the ability to burn fire

27   wood in the fire pit, but took no action.

28   /////

4

Plaintiff indicates that sometime around January, 2011, while he was housed at CSP-Sac, he possessed a large lock box / "Wiccan altar," "handcrafted of wood and varnish."  Plaintiff alleges defendant Konrad confiscated the empty box out of retaliation for something, but does not specify the precipitating event.  Plaintiff also alleges that defendant Elia denied plaintiff's grievance seeking return of the box indicating it was not an "allowable item."  Plaintiff also alleges that defendant Warden Virga was involved in the confiscation and refusal to return plaintiff's lock box / altar.

Finally, plaintiff makes representations about what Native Americans are entitled to in furtherance of their religious practices in an attempt to state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff alleges that Native Americans are entitled to use a sweat lodge once per week, creating the steam by burning firewood.  Plaintiff alleges that the Native American religion is "earth based" just as Wicca is, but fails to make any allegation as to the significance of sweat lodges for Native Americans or "bonfire ceremonies" for Wiccans or compare the religious beliefs and practices of each group in any meaningful way.

Based on the above allegations, plaintiff asserts three claims for damages:

1.  Plaintiff was deprived of his First Amendment right to free exercise of religion when defendants Jones, Huggins, Elia and Virga failed to allow plaintiff to burn wood in a fire pit at CSP-Sac consistent with plaintiff's Wiccan beliefs.  ECF No. 25 at 26-29.

2.  Plaintiff was deprived of his right to free exercise of religion guaranteed by the First Amendment when defendants Konrad, Elia and Virga confiscated a lock box / "Wiccan altar" belonging to plaintiff.  Id. at 31- 34.

3.  Plaintiff's right to equal protection of the laws under the Fourteenth Amendment was violated by defendants Elia, Virga, Jones and Huggins when they failed to allow plaintiff to burn wood in a fire pit at CSP-Sac consistent with plaintiff's Wiccan beliefs.  Id. at 35-37.

Plaintiff also seeks CDCR-wide injunctive relief as stated below.[3]

---

[3]  In his amended complaint, plaintiff seeks an order directing each CDCR facility to provide Wiccans with a cord and a half of wood each month to burn in fire pits.  However, plaintiff withdraws this request for relief in his opposition to defendants' motion for summary judgment. ECF No. 111-1 at 69.  Also, to the extent plaintiff seeks injunctive relief at CSP-Sac only, plaintiff's claim is mooted by his transfer to RJD.  Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir.

1    As indicated below, the court finds that defendants are immune from suit under the

2  "qualified immunity" doctrine with respect to plaintiff's first and third claims, that there is

3  insufficient evidence for claim two to proceed to a finder of fact, and that plaintiff's requests for

4  injunctive relief are too broad.  For these reasons, the court will recommend that defendants'

5  motion for summary judgment be granted.

6  III.  Arguments and Analysis

7    A.  Sincerity of Plaintiff's Beliefs

8    In their motion, defendants argue and present evidence indicating that plaintiff's

9  allegation that he is a Wiccan is not sincere.  Defendants point to evidence including that, at

10  various times, plaintiff has asserted that he is a follower of other religions including Odinism,

11  Druidism, and Judaism.

12    To prevail on his First Amendment claims, plaintiff has to show that his assertion that he

13  is a follower of Wicca is sincere.  Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008).

14  However, plaintiff's assertion that he is a Wiccan, made under the penalty of perjury, creates a

15  genuine issue of material fact as to this mostly subjective issue and, in any case, the evidence

16  presented by defendants does not undermine plaintiff's assertion to a significant enough degree

17  for this court to find that no reasonable juror could find that plaintiff really is a Wiccan.

18    Accordingly, summary judgment cannot be granted to defendants on the ground that

19  plaintiff's professed belief in Wicca is not sincere.

20    B.  Defendants Huggins and Jones

21    Plaintiff alleges that defendants Jones and Huggins told plaintiff he must extinguish a fire

22  burning during a "bonfire ceremony" in late 2010. Plaintiff alleges that Jones and Huggins were

23  directed to take this action by defendant Elia.

24    In his declaration (ECF No. 97-4, Ex. 5), defendant Jones indicates at some point while he

25  was employed at CSP-Sac, he confiscated broken down pallets used by Wiccans as firewood in

26  their ceremonies.  According to Jones, the broken down pallets contained nails.  Defendant Jones

27  felt that the nails and the pieces of wood from the pallets could be fashioned into weapons.  Jones

28  2001).  Plaintiff admits as much in his amended complaint.  ECF No. 25 at 29.

6

1    describes this as a one-time occurrence and says that he did not have any other involvement with

2    the religious practices of Wiccan inmates.  In his declaration (ECF No. 97-4, Ex. 4), defendant

3    Huggins asserts that sometime before he retired in December of 2010, he carried out an order to

4    confiscate the broken down pallets used by Wiccans as firewood.  He indicates that correctional

5    staff were concerned that the wood being used by the Wiccans contained nails.

6         In his declaration, plaintiff asserts he was told by Jones and Huggins that defendant Elia

7    was of the opinion that Wiccans were not permitted to burn wood and that "custody" should put a

8    stop to it.  ECF No. 111-3 at 5.  Plaintiff admits that he tore apart pallets for wood to burn and

9    some of the wood he burned had nails.  Plaintiff says, however, that he collected the nails from

10   the fire pit and turned in the nails approximately once per week.  Id. at 6.

11        Plaintiff admitted at his deposition that he never received authorization to burn torn up

12   pallets as part of a religious exercise.  ECF No. 97-4 at 69.  Defendant Elia concurs that plaintiff

13   never had authorization to burn wood in a fire pit.  ECF No. 97-4 at 9.

14        Defendants assert they are immune from all of plaintiff's remaining claims for damages

15   under the "qualified immunity" doctrine.  Generally speaking, damages cannot be recovered from

16   a government official performing discretionary functions unless the official's conduct amounted

17   to a violation of a clearly established statutory or constitutional right of which a reasonable person

18   would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Official action is not

19   protected by qualified immunity simply because the specific action in question has never been

20   held unlawful, however the unlawfulness of the conduct must be apparent from pre-existing law.

21   Anderson v. Creighton, 483 U.S. 635, 640 (1987).

22        The court finds that defendant Jones' and Huggins' single instance of ordering plaintiff to

23   cease his "bonfire ceremony" and their confiscation of the broken down pallet materials

24   containing nails did not amount to a violation of a clearly established federal right, especially

25   since plaintiff had never received official authorization from anyone at CSP-Sac to conduct

26   "bonfire ceremonies."  There is no law suggesting that as correctional officers Jones and Huggins

27   were required to assess plaintiff's rights arising under the First and Fourteenth Amendments, or

28   that they had to wait until those rights could be assessed, prior to confiscating inherently

7

1  dangerous items which were being used as fuel for fire inside a correctional institution and

2  potentially could have been made into weapons.   There is no evidence suggesting that it was up

3  to defendant Jones or Huggins to decide whether plaintiff's Wiccan beliefs would entitle him to

4  burn wood in a fire pit as part of a Wiccan ceremony.  Neither is there evidence that defendant

5  Jones or Higgins proximately caused a temporary or permanent ban on the burning.

6         For these reasons, defendants Jones and Huggins should be granted summary judgment

7  based upon the qualified immunity doctrine as to plaintiff's remaining claims against them.

8         C.  Defendant Elia

9              1.  Burning of Wood in Fire Pit

10        Plaintiff alleges that defendant Elia directed defendants Jones and Huggins to confiscate

11  the pallet materials being burned by plaintiff during ceremonies.  Also, plaintiff alleges that Elia

12  told plaintiff that Wiccans would no longer be allowed to burn wood in a fire pit because that

13  practice is not recognized as a necessary Wiccan practice in the FBP Manual.

14        In his declaration (ECF No. 97-4, Ex. 2), defendant Elia indicates as follows:

15        1.  At the relevant period of time, Elia was employed at CSP-Sac as the Community

16  Resources Manager (CRM).  In his capacity as the CRM at CSP-Sac, defendant Elia supervised

17  the chaplains at the institution.

18        2.  At the time of the events that form the basis of plaintiff's claims, Wiccans had not been

19  authorized to burn wood in a fire pit for their religious ceremonies.  Defendant Elia was not the

20  person who denied Wiccans the ability to burn firewood and it was not his responsibility to

21  decide whether or not they could.  Further, Elia did not have the authority to issue orders to

22  correctional staff and did not order any correctional officer to confiscate fire wood used by

23  Wiccans.

24        3.  Defendant Elia served as the first level reviewer for plaintiff's grievance concerning

25  the burning of wood in a fire pit. ECF No. 97-4, Ex. 2C.  Plaintiff sought a "memo" authorizing

26  use of a fire pit.  Defendant Elia denied plaintiff's grievance on February 11, 2011 citing the FBP

27  Manual:

28  ////

1
2
3

"The manual states that a wood wand (no longer than a pencil) is a personal religious item which may be utilized to honor fire as an element of nature.  It also cites candles and incenses as congregate [communal] religious items.

4   Plaintiff does not dispute that this a correct representation of the contents of the FBP

5   Manual, officially known as the Federal Bureau of Prisons Technical Reference Manual on

6   Inmate Religious Beliefs and Practices and identified by publication number T5360.01.[4]  Further,

7   neither an open fire, nor a fire pit is identified as a "congregate" item for Wiccans in the FBP

8   Manual (pp. 13-14).

9   Finally, the court notes that plaintiff does not allege that he presented any evidence

10   regarding the practice of Wiccans to defendant Elia, or any other defendant, other than his own

11   statements.

12   Inmates retain the protections afforded by the First Amendment.  O'Lone v. Estate of

13   Shabazz, 482 U.S. 342, 348 (1987).  However, the circumstances of incarceration provide a

14   justification for limitation of those rights.  Id.

15   When a prison regulation impinges upon an inmate's First Amendment rights, the

16   regulation will be deemed valid as long as "it is reasonably related to legitimate penological

17   interests."  Turner v. Safley, 482 U.S. 78, 79 (1987).  There are four factors courts must consider

18   in determining whether a prison regulation is reasonably related to legitimate penological

19   interests:

20   1.  Whether there is a valid, rational connection between the prison regulation and the

21   legitimate government interest put forward to justify it;

22   2.  Whether there are alternative means of exercising the right;

23   3.  Whether accommodation will impact correctional staff, other inmates and the

24   allocation of prison resources; and

25   ////

26

27   _____

[4]  The Federal Bureau of Prisons indicates that the purpose of the FBP Manual is to "assist chaplains and administrative personnel to appropriately facilitate the religious beliefs and practices of inmates within a correctional environment."  FBP Manual, introductory page.

28

1      4.  Whether there is an absence of ready alternatives versus the existence of obvious, easy

2  alternatives.

3  Turner, 482 U.S. at 89-90.

4      With respect to the free exercise of religion guaranteed under the First Amendment, only

5  those beliefs which are sincerely held and religious in nature are entitled to protection.  Shakur,

6  514 F.3d at 884.

7      The court finds that defendants' motion for summary judgment with respect to plaintiff's

8  claims arising from plaintiff's allegation that defendant Elia denied plaintiff the ability burn wood

9  in a fire pit should be granted as such claims are also barred under the "qualified immunity"

10  doctrine.

11      First, with respect to plaintiff's free exercise claim, and as noted by defendant Elia in his

12  declaration, Elia relied upon the FBP Manual as to whether a ceremony with an open fire is a

13  necessary practice of Wiccans.  The FBP Manual indicated there are alternatives to open fire

14  ceremonies in the practice of Wicca.  Furthermore, defendant Elia was not presented with any

15  religious literature indicating a ceremony with an open fire is a significant exercise of Wicca.

16      Second, as demonstrated above, the law regarding an inmate's right to free exercise

17  involves consideration of multiple factors leaving much room for interpretation.  While it seems

18  fairly clear that relatively innocuous behavior such as possessing a bible is protected, inmate

19  access to dangerous conditions such as an open fire, based upon nothing more than the inmate's

20  representation about a religious practice, presents a clear basis for the possibility that protection

21  under the Free Exercise Clause would not be found.   In fact, a survey of federal case law

22  regarding the First Amendment fails to reveal a single instance where a court found that failure to

23  allow imprisoned Wiccans, or members of any other religious group, to burn firewood in a fire pit

24  as the centerpiece of a religious ceremony amounted to a violation of the First Amendment.

25      On May 9, 2012 in Birdwell v. Cates, No. 2:10-cv-0719 KJM GGH P, the court found

26  that, under the record presented in that action, failure to provide imprisoned Odinists with the

27  ability to burn wood in a fire pit, as opposed to candles, did not amount to a violation of the First

28  Amendment.  ECF No. 88 at 20-21.  Similarly, in Smith v. Allen, 502 F.3d 1255, 1280 (11th Cir.

1    2007), the Eleventh Circuit found that providing an imprisoned Odinist with a small candle rather

2    than the ability to build a small fire was sufficient under the record presented because plaintiff

3    failed to show the necessity of an actual fire in connection with Odinist rites.  The court is aware

4    that in <u>Rouser v. White</u>, 707 F. Supp. 2d. 1055, 1067 (E.D. Cal., 2010) the court found that failure

5    to allow a Wiccan access to a fire pit used by Native Americans to heat rocks for their sweat

6    lodge was a violation of the Free Exercise Clause of the First Amendment.  Importantly, however,

7    while the court ordered prison officials to allow plaintiff access to the Native American fire pit

8    for ceremonies, the court did not order that plaintiff be permitted to have a ceremony around an

9    open fire (as opposed to candles) or make any orders regarding use of the pit.

10          In light of the record before the court, even if the court were to find that there is a genuine

11   issue of material fact as to whether plaintiff's right to Free Exercise under the First Amendment

12   was violated by defendant Elia when he denied plaintiff the ability to conduct a ceremony around

13   an open fire, Elia's conduct did not amount to a violation of a clearly established right arising

14   under the First Amendment of which a reasonable person would have known.[5]

15          The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that

16   all persons similarly situated be treated similarly.  <u>City of Cleburne v. Cleburne Living Center</u>,

17   473 U.S. 432, 440-41 (1985).  In order to prevail on a § 1983 claim for denial of equal protection

18   under the Fourteenth Amendment, a plaintiff must show that he was treated in a manner

19   inconsistent with others similarly situated by a particular defendant as a result of intentional

20   discrimination based upon the plaintiff's membership in a protected class.  <u>Thornton v. City of St.</u>

21   <u>Helens</u>, 425 F.3d 1158, 1166-67 (9th Cir. 2005).  No court has ever held that it is a violation of

22   the Equal Protection Clause to deny Wiccan prisoners a fire pit and an open fire if Native

23   Americans are permitted to use an open fire to heat rocks for a sweat lodge.  Furthermore, no

24   court has ever held that Wiccans and Native Americans are similarly situated with respect to their

25   _____

26   [5]  The court recognizes that defendants' motion to dismiss plaintiff's First Amendment claims
     against defendants Elia, Virga and Konrad on the basis of qualified immunity was denied.  ECF
     No. 42, 45.  The ruling does not preclude a finding that defendants are immune here considering
27   the court may now consider evidence, or the lack thereof, such as the declaration of defendant
     Elia, which the court could not consider when ruling upon defendants' motion to dismiss.

28

1    need for open fires in a fire pit in furtherance of their respective religions.[6]

2            As indicated above, there is no evidence indicating that plaintiff provided defendant Elia

3    with any Wiccan literature, treatises, declarations from Wiccan experts, etc., indicating a need for

4    an open fire in a fire pit.  Also, as indicated above, neither an open fire, nor a fire pit is identified

5    as a "congregate" item in the FBP Manual (pp. 13-14), although a "sweat lodge" and a "fire pit"

6    are identified as "congregate" items for Native Americans.  Id. at 7.  Of course there is no law

7    indicating an inmate belonging to one religion must be given access to dangerous conditions such

8    as an open fire based upon nothing more than the inmate's representation that inmates belonging

9    to a second religion are permitted such access and that plaintiff is similarly situated.

10           For all of these reasons, and taking all of the evidence in the light most favorable to

11   plaintiff, the court cannot find that it would have been apparent to a reasonable correctional

12   official that the denial of a request made by plaintiff to burn an open fire in a fire pit would

13   amount to a violation of the Equal Protection Clause of the Fourteenth Amendment.

14                   2.  Lock Box / Altar

15           Plaintiff alleges that a large altar box "handcrafted of wood and varnish" was confiscated

16   from plaintiff per the orders of defendant Konrad.  Plaintiff filed a prisoner grievance regarding

17   this.  The grievance was heard and denied at the first level by defendant Elia.  ECF No. 97-4 at

18   21.  Plaintiff asserts defendant Elia's handling of the grievance violated plaintiff's First

19   Amendment rights because Elia did not order the return of the box or order it reconstructed.  As

20   indicated below in section E, confiscation of the lockbox / altar does not amount to a violation of

21   plaintiff's right to free exercise under the First Amendment.  Therefore, the denial of plaintiff's

22   grievance concerning that issue does not amount to a violation of the First Amendment.

23           D.  Defendant Virga

24                   1.  Burning of Wood in Fire Pit

25           Warden Virga reviewed defendant Elia's decision to deny plaintiff's grievance regarding

26   _____

27   [6]  In Birdwell, No. 2:10-cv-0719 KJM GGH P, the court found that Odinists and Native
     Americans were not similarly situated with respect to an equal protection claim brought by an
     Odinist concerning the denial of the ability to burn wood because "[t]he relationship between fire

28   and the . . . religions is different."  ECF No. 82 at 24.

                                          12

1    the burning of wood in a fire pit at the second grievance level.  The appeal issues before

2    defendant Virga were summarized as follows:

3            You indicate the Wiccans (mainly) have attempted to file a CDC
             602, Inmate/Parolee Appeal Form (appeal) on the fact that Wiccans
4            have an equally protected Fourteenth Amendment right to burn a
             fire in a fire pit as part of their religious doctrine as is allowed for
5            other faiths.  You state that previous appeals were disapproved after
             being sent by the SAC Appeals Officer to SAC Community
6            Partnership Manager, M. Elia, for a response at the Informal Level
             of Review (ILR).  Therefore, you indicate that you "submit this
7            appeal and also address the issue of our permission to obtain pallets
             for fire wood."
8
             You are requesting a memorandum authorizing the Wiccan lodge to
9            use their fire pit for ceremonies and rituals.  You are also requesting
             either a memorandum authorizing the use of fire wood pallets from
10           the supply truck for fire wood, or a monthly one and one-half cord
             issue of Oak firewood as authorized to other faiths for burning.
11

12   ECF No. 97-4 at 56.

13           Defendant Virga responded to plaintiff's appeal as follows:

14           The FLR [first level responder] noted your concerns and that you
             were interviewed on February 1, 2011.  The FLR revealed that the
15           guidelines regarding your issue are found in the United States
             Department of Justice Federal Technical Manual of Religious
16           Beliefs and Practices, which states that a wood wand is a personal
             religious item which can be utilized to honor fire as an element of
17           nature.  The SLR [second level reviewer] notes that the response at
             the FLR was comprehensive and addressed your concerns.  Your
18           dissatisfaction with the FLR is based on your claim that Warden
             Virga said "If supported by a doctrine, he would obviously give you
19           equal use of a fire pit."  You stated that the attached Federal policy
             is binding only to the Federal Prisons and your right to equality
20           cannot be legally denied.  You further stated that the State of
             California utilized the Federal Act, Religious Land Use and
21           Institutionalized Persons Act (RLUIPA).[7]  You indicated that the
             institution permits Native American inmates to burn as part of their
22           doctrine; therefore, your request for the Wiccans to be allowed to
             burn cannot be denied.  You allege that it is a deprivation under the
23           First  Amendment  and  discrimination  under  the  Fourteenth

24   _____

25   [7]  Plaintiff does not assert a claim for violation of RLUIPA in his first amended complaint.  In any
     case, plaintiff seeks only damages against defendants Elia, Huggins, Jones, Konrad and Virga and
26   damages cannot be obtained under RLUIPA.  See Sossamon v. Texas, 563 U.S. 277 (2010)
     (Eleventh Amendment immunity shields state actors acting in their official capacity from an
27   award of damages under RLUIPA).  See also Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014)
     (RLUIPA does not authorize suits against state actors acting in their individual capacity).
28

                                            13

> Amendment and you claimed that the reason for denial is invalid. Based on information obtained at the FLR and confirmed at the SLR, that an item that can be used to honor the element of fire includes a wood wand, which needs to be no larger than a pencil, your ability to worship is not being impeded upon and your claims of violations of the First and Fourteenth Amendments are unsubstantiated at the SLR.
>
> Based on the above information, your request to receive a memo authorizing the Wiccan Lodge to utilize the fire pit for ceremonies and ritual, and your request to receive either a memo for authorization to use wood pallets from the supply truck for fire wood or a monthly one and one-half cord of Oak firewood per month are denied.

Id. at 57.

For all of the reasons identified above with respect to plaintiff's free exercise claim and equal protection claim against defendant Elia, defendant's motion for summary judgment with respect to those same claims against defendant Virga should also be granted on the basis of qualified immunity.

### 2. Lock Box / Altar

Plaintiff alleges defendant Virga denied plaintiff's grievance regarding the confiscation of his lock box / altar at the second level. In his declaration (ECF No. 97-4 at 51) defendant Virga asserts he did not review plaintiff's grievance. While Virga's name appears at the bottom of the second level decision, his signature does not. Id. at 61.[8] In his declaration, Virga asserts this indicates the grievance was reviewed on behalf of Virga by a staff member designated by him. Because plaintiff fails to point to any evidence suggesting Virga did review the lock box grievance at the second level, defendant Virga should be granted summary judgment as to the claim regarding the confiscation of the lock box.

### E. Defendant Konrad

Plaintiff alleges that a large altar box "handcrafted of wood and varnish" with a lock on it was confiscated from plaintiff per the orders of defendant Lt. Konrad. In his first amended complaint, plaintiff alleges that as a result of his being placed in administrative segregation, his box, which had no contents, ended up in an office for correctional officers. ECF No. 25 at 16-17.

---

[8] Compare the signature at the bottom of ECF 97-4 at 57 which is defendant's Virga's.

1   Not knowing why the box was in the office, a correctional officer called defendant Konrad.  ECF

2   No. 25 at 17.  Defendant Konrad knew the box belonged to plaintiff and "already had a bad

3   history with plaintiff."  Id.  Plaintiff alleges that, in order to "exact a little retaliation," Konrad

4   ordered that the box be taken "off the whole yard."  Id.  Plaintiff also alleges that by the time he

5   found out that Konrad had ordered the box removed, it was gone and Konrad refused to return it.

6   Id.  Presumably, the box was destroyed.  Id. at 18.

7        Plaintiff fails to explain why he believes he and Konrad "had a bad history" or point to a

8   basis for retaliation.  In his declaration attached to his opposition to defendants' motion to

9   dismiss, plaintiff asserts that Konrad told plaintiff that he had ordered that plaintiff's box be

10  "removed off yard."  ECF No. 111-3 at 20.

11       In his declaration, defendant Konrad indicates as follows:

12       1. On December 1, 2010, Lt. Konrad received a call from floor staff who were concerned

13  about plaintiff storing a wooden box with a lock on it in his cell.  Plaintiff did not have

14  permission to have the box in his cell.  For security reasons, inmates were not permitted to have

15  anything in their cells that could be locked.  Plaintiff's keeping the box in his cell in violation of

16  CDCR regulations meant that the box was subject to being confiscated as contraband.

17       2. Lt. Konrad ordered that the box be removed from plaintiff's cell and temporarily stored

18  in a staff office.

19       3. Lt. Konrad took no other action with respect to plaintiff's box and does not know what

20  happened to the box after he issued his order.

21       4. The area where plaintiff was housed at this time was considered Level IV which is the

22  highest custody level; Level IV inmates pose the greatest threats to security and safety.

23       In his declaration (ECF No. 97-4 at 28), Chaplain Goeke indicates that in 2008 he

24  temporarily released plaintiff's box to plaintiff to transport to his housing unit for storage in a

25  location designated by correctional staff.  Chaplain Goeke never gave plaintiff permission to keep

26  the box in his cell; Goeke could give such permission as allowing an inmate to keep a locked box

27  in his cell would have violated CDCR regulations.

28  ////

15

1    To be clear, the issue is whether plaintiff was denied his right to free exercise, not whether

2  his property was improperly taken from him, as an unauthorized intentional deprivation of

3  property by a state employee does not, by itself, violate federal law.  Hudson v. Palmer, 468 U.S.

4  517, 533 (1984).  Again, in terms of the Free Exercise Clause of the First Amendment, when a

5  prison regulation impinges upon an inmate's First Amendment rights, the regulation will be

6  deemed valid as long as "it is reasonably related to legitimate penological interests."  Turner, 482

7  U.S. at 79.

8    Prison officials have a clear security interest in precluding inmates serving lengthy

9  sentences and housed in a Level IV security prison from keeping personal property items hidden

10  from them in a portable lock box.  Further, there is no evidence indicating that plaintiff denied

11  access to an altar made to acceptable Wicca specifications in a form other than a portable lock

12  box.  Nor is there any evidence that plaintiff's ability to exercise his Wiccan beliefs was burdened

13  in any material way as a result of confiscation of his lock box.[9]  For these reasons, the

14  confiscation of plaintiff's lock box / altar, or denying plaintiff access to it, did not amount to a

15  deprivation of his First Amendment rights.

16    F.  Injunctive Relief

17     Plaintiff seeks injunctive relief as follows (ECF No. 25 at 30):

18    1.  An order directing that all "earth based faith groups" receive the same religious based

19  accommodations as Native Americans in the California Code of Regulations and the CDCR

20  Department Operations Manual.

21    2.  An order requiring all CDCR facilities to have a 40 x 40 foot fenced off area for

22  Wiccan ceremonies, with that area including a fire pit and water line and a similar 40 x 40 foot

23  area for "Asatru Faiths."

24    3.  That all Wiccans housed in CDCR be permitted access to an altar made to Wicca

25  specifications, approximately 2 x 2 x 2.

26  _____

27  [9]  At his deposition, plaintiff indicated that the confiscation of his large lock box did not actually affect his ability to exercise his religious beliefs in that:  1)  the primary function of the box was for storage of his religious "tools" in a consecrated box; and 2)  he had another small consecrated box he could use for storage during and between ceremonies.  ECF No. 97-4 at 77-79.

28

All of plaintiff's requests are too broad.   Under 18 U.S.C. § 3626(a)(1)(A):

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff . . .  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the federal right. . .

Any order issued to the Secretary of CDCR regarding conditions of confinement concerning plaintiff's rights would have to be particular to plaintiff and his exercise of Wicca rather than CDCR-wide with respect to any "earth based faith groups."[10]

Furthermore, with respect to request number 1, plaintiff fails to identify the ways in which Native Americans are provided religious accommodations in CDCR regulations, let alone that he or other followers of "earth based faith groups" are entitled to the same accommodations.

For these reasons, plaintiff is not entitled to the injunctive relief he seeks. [11]

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's January 25, 2016 request for leave to file a sur-reply regarding defendants' motion for summary judgment (ECF No. 117) is denied; and

2.  The sur-reply filed by plaintiff on January 25, 2016 is stricken.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 97) be granted and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

---

[10]  Plaintiff's motion for class certification was denied on January 18, 2013.  ECF No. 24 at 2.

[11]   The court notes that plaintiff is currently pursuing claims in the United States District Court for the Southern District of California with respect to the his practice of Wicca at RJD.  Avery v. Paramo, 3:13-cv-2261 BTM DHB.  In his complaint, plaintiff seeks injunctive relief including the construction of a 40 x 40 foot fenced off area for Wiccan ceremonies at RJD, with that area including a fire pit and water line.  The court expresses no opinion as to whether plaintiff should be granted injunctive relief in order to remedy a violation of his Constitutional rights at RJD as that request for relief has not been made here and is more properly before the Southern District. He also seeks the same changes to CDCR regulations as he seeks here.  ECF No 1. at 68-69.

17

1   after being served with these findings and recommendations, any party may file written

2   objections with the court and serve a copy on all parties.  Such a document should be captioned

3   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

4   objections shall be served and filed within fourteen days after service of the objections.  The

5   parties are advised that failure to file objections within the specified time may waive the right to

6   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7   Dated:  February 19, 2016

8   _____
    CAROLYN K. DELANEY
9   UNITED STATES MAGISTRATE JUDGE

10

11

12   1
     aver3341.57
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18